25-3024. United States of America v. Josue Eduardo Rodas, appellant. Mr. Farley, for the appellant. Mr. Hansberg, for the appellate. Good morning. Mr. Farley, whenever you're ready. Good morning, and may it please the Court, Matthew Farley for Mr. Josue Rodas. I'd like to reserve two minutes for rebuttal. Mr. Rodas finished his one-day term of supervision on July 13, 2022. After that, the District Court had no jurisdiction to supervise Mr. Rodas or bring him into court for revocation proceedings. The District Court's conclusion otherwise was wrong. At Mr. Rodas's sentencing hearing, when the Court began to impose a perfectly lawful sentence under the D.C. Code, it was the government that insisted that the Court must impose a period of probation, it was the government that suggested that the period of probation should be one day, and it was the government that suggested suspending the period of probation. Despite these invited errors, the government never filed a Rule 35 motion or an appeal. Only now, when Mr. Rodas seeks to have the Court enforce the lawful terms of his judgment, does the Court government choose to act, seeking remedies that are no longer available. Mr. Rodas asked the District Court, and now asks this Court, to lawfully execute his criminal judgment, and doing so can only have one result. He is no longer subject to the District Court's supervision. This Court should reverse and remand to the District Court with instructions to order Mr. Rodas discharged from supervision. Mr. Farley, so I'm concerned about our appellate jurisdiction here in this case, because what the District Court's order is not final, or at least arguably not final, and I'm not sure how this fits into the collateral order doctrine. Why does Mr. Rodas not have to wait until these revocation proceedings conclude? So I think there's two reasons that Mr. Rodas doesn't have to wait until revocation proceedings conclude. The first being that I would maintain that this order is final. This is a motion to terminate supervision because of the lack of the District Court's supervision that could have been brought before a revocation petition. It could have been brought the day it was that it had jurisdiction to supervise Mr. Rodas is a final order. It's the closest statutory analog is the 3583e motion, which are reviewable by this Court as final orders. But they're very different. This is Judge Randolph. They're very different because once the District Court denies a motion to terminate supervision, there's nothing more for the District Court to do. But that's not true here. I mean, the result of the denial is that there'll be a trial about whether he in fact violated the conditions. So the cases that you cite are very, very different in terms of finality. Yes, Your Honor, they are different. This is a unique position, a first impression for this Court. I would say that the result of the denial of Mr. Rodas's motion is actually is not the what will be the revocation hearing. That revocation hearing is a result of probation's petition. The result of Mr. Rodas's motion being denied is just that he's continued to be subject to supervision in the Court's jurisdiction. But in the alternative, I do think Mr. Rodas's motion and the Court's order satisfy the collateral order doctrine. Under this Court's decision in Trebelsi, we looked at the logic of Abney. And I think Abney is on at least three legs, if not four here. Abney, which is the Supreme Court's decision giving interlocutory jurisdiction over double jeopardy motions, says that when you're challenging the Court's ability to hill you into court at all, which is exactly what Mr. Rodas is doing here, that is an important and inseparable order that is not reviewable on appeal later because you're being subjected to the burden, the harm, the stigma, everything that comes with further criminal court proceedings. Go ahead. No, go ahead. I was just going to say, but the situation, it seems to me, is very difficult to distinguish from the mine run, run of the mill motion in criminal cases to dismiss the indictment for one reason or another. It doesn't state a crime, there's no jurisdiction, there's this, there's that, and everything else. And those routine motions in criminal trials cannot be appealed. Double jeopardy is an exception, and that's because of the constitutional aspect to it. Yes. Yes, Your Honor, that is, and you're obviously correct that the general motions brought pre-trial are not immediately appealable. And the Supreme Court is instructed to interpret interlocutory jurisdiction criminally strictly. But the reasoning behind that guidance to interpret it strictly is for the public interest in a speedy trial, for the public interest in proceedings moving forward. We are post-conviction. The court's reasoning and justification for why interlocutory jurisdiction is interpreted so strictly in criminal cases is, I would argue, inapplicable, but at least much less applicable in a case about revocation on supervised release. But how, Mr. Farley, does your argument intersect with the many cases that say there's no general right not to be tried, right? So we have collateral, you know, order review when things are really important, if it's double jeopardy or there's a speech and debate clause issue, I mean, where there's some specific constitutional limitation on moving forward. But there are lots of cases that say there's, you know, just no general right not to be tried. And it seems like what you're arguing for here, for Mr. Rodas. There is, you're correct, there is no general right not to be tried. But as your Honor just listed, there are constitutional protections for specific situations where you have a right not to be tried, where you have a right not to be hailed into court. So what's the right here, then? Sorry? What's the right here that Mr. Rodas- The right here is analogous to the double jeopardy right not to be hailed back into court after you've fully completed your sentence. And analogous to one of the rights that is already recognized with the Supreme Court is the general test that courts of appeals, including this court, look to in whether or not interlocutory jurisdiction is appropriate. I'm possibly persuadable that a typical motion to terminate supervised release is appealable when it's denied. But those motions and the provision, section E3583E1, imagine terminating a validly I'm not sure you can terminate a supervised release that doesn't exist. And your argument is that the supervised release doesn't exist and never existed. Yes, Your Honor, our argument is that the supervised release term has become a nullity. That's the language of the D.C. Court of Appeals. How do you how do you how do you terminate something that was never alive? I think what Mr. Rodas would be asking is not for the actual termination, the supervision to be terminated, but for the court to terminate its attempts to exercise jurisdiction over him. I think would be that we're dealing with a unique situation where that sounds like a habeas petition. If a court tries to impose some kind of if any if any if any government entity tries to impose some kind of authority over somebody without jurisdiction, that that sounds that seems like a habeas motion. It's it sounds like one. But this court's opinion in Marsh instructs that the proper remedy for arguing that a court doesn't have jurisdiction to exercise supervision over you is to a direct appeal to this court. So you could have you could have challenged the validity of the supervised release the first day of his supervised release or the first day that the court attempted to supervise him on release. I think you also could have challenged as soon as the sentence was imposed and arguably you had to. But even putting that aside, I don't understand how you can get around the time limits for challenging an unlawful sentence. I don't know how you can get around those time limits. Your your honor is correct that Mr. Rodas could have filed this motion that I would say on July 14th, 2022 when there was a way if there was any attempt on that day to exercise jurisdiction over him. But I would argue you had no obligation to the the jurisdiction camp. An argument that there is no jurisdiction can be waived. The error is always plain. Mr. Rodas that Mr. Rodas waited or didn't file this motion until possible re-imprisonment became a possibility. It's perfectly reasonable and the Mr. Rodas had no obligation and the government hasn't said any case stated that he had an obligation to do so beforehand. Let me ask maybe just one more question. Even if you can appeal the denial of a motion to terminate supervised release, you can't appeal a motion, a denied motion to dismiss supervised release proceedings. I don't think. Let's assume that. And it seems to me that in your appellate brief, your opening brief, that's what you appealed. On page little i, you say the the ruling under is the order of the district court denying defendant appellate's renewed motion to dismiss supervised release proceedings. And then on page Arabic numeral one, you say that the issue presented review is whether the district court has jurisdiction to hold revocation proceedings for Mr. Rodas. And then the argument section, you say the district court should have dismissed the revocation proceedings. For example, you say Mr. Rodas is no longer under supervision, which assumes that he was once under supervision. But I looked at the district court docket. I think to be fair to you, it looks like you made a motion to dismiss and in the alternative, a motion to terminate, which you can kind of think of as two motions. But then I think arguably, you only appealed the denial of the first motion. You only appealed the denial of the motion to dismiss the revocation proceedings. To tackle your question in a few parts, just first, Mr. Rodas does concede he was under supervision for that one day that he was on probation on July 13th, 2022. To move further along, I think what your honor is pointing out is the difficulty with what you earlier pointed out, that how do you terminate something that doesn't exist? How is it a motion to dismiss the proceedings? Is it a motion to dismiss supervision generally? Mr. Rodas is appealing both the district court's refusal to or denial of his motion to dismiss supervision generally, which would include those revocation proceedings where he was being held into court. Mr. Rodas has also challenged the reasoning behind the district court's motion, denial of his motion to terminate. And so there, Mr. Rodas' motion includes both of those. Mr. Farley, this is Judge Randolph. Has your client been tried on the Fort Meade charges? The Fort Meade charges were disposed of. It says closed administratively on the docket. I believe that might be some term used in the District of Maryland I'm less familiar with that I think might incite some sort of plea agreement that I'm not completely clear on. So he hasn't been tried on those charges? No, he has not. That case has been closed. Okay. Were there other charges that were pending against him? Yes, Your Honor. There were other state charges in Maryland, I believe, all in Prince George's County, some of which have been resolved. Mr. Rodas is currently on home incarceration for one of those charges. He's currently in prison? No, he's on home confinement. Oh, home. Well, okay. So he's subject to a sentence from Maryland State Court, yes. Okay. Mr. Farley, just one other question for me. Is there any evidence that he properly served his one day of probation in the record? Like, is there any, I mean, do we know anything about that one day of probation, like whether he met the criteria for probation or whatever that was? The, what I would say is that to show any sort of violation or problems with that one day of probation would be the government's burden. There is no, there's nothing in the record indicating that there was any sort of violation or anything improper happened on July 13, 2022, that would have resulted in that, meaning that his probation did not complete as written. If Judge Randolph or Judge Walker have any other further questions? No. Okay. Thank you. Mr. Hansford, are we ready? Sure. Good morning, and may it please the court, Eric Hansford for the United States. This court lacks jurisdiction over this interlocutory appeal. The revocation proceedings remain pending in the district court, and denial of a motion to dismiss a revocation proceeding is a classic non-final order that can be heard after the revocation proceedings conclude, but is not subject to interlocutory appeal. And I think the defendant is offering what I understand to be two separate jurisdictional theories here. One is the motion determinate theory, and one is the collateral order doctrine. So I can just address those in order. So as to the motion determinate, I think there are two problems with that theory. First is that the cases that say a motion determinate is appealable are cases where, as Judge Randolph's questions, we're going to where the proceedings in the district court have been concluded. So the classic statement of when something is final, this comes from Midland Asphalt, as well as other cases, is that a decision that ends the litigation on the merits. So in the cases that are finding jurisdiction to review a motion to terminate, there's nothing else pending in the district court. Here, by contrast, there is still the revocation proceeding pending in the district court. Therefore, it's not final and instead has to go through the collateral order doctrine to get review. The second problem with relying on those cases, to Judge Walker's questions, is that the issue that's being pressed on appeal is not the motion to terminate. The motion to terminate was, I mean, I think it was largely an afterthought in the litigation. It was really only articulated in the reconsideration litigation, but the district court, this is on A25 of the record, which is the minute order that denies the reconsideration motion. It describes the motion to terminate as, even if jurisdiction exists, defendant supervised release should be terminated as unsuccessful. And the defendant was making that motion on the theory that supervision was doing more harm than good, that he had a job and he was being pulled out of his job to do drug testing and mental health testing and things like that. But that's the motion to terminate argument, which is that I shouldn't, even assuming you do have jurisdiction, I am on supervised release, you should terminate my supervised release early. And under the statute that looks at the interests of justice and how the on supervised release in the first place. And so that sort of argument that I was never on supervised release in the first place, that is brought through a motion to dismiss. And that's the only argument that the defendant is actually pressing on appeal. He's not arguing now that the district court should have terminated early based on the factual circumstances underlying my supervised release. You agree that if there had just been a one line motion that didn't mention anything about the revocation proceedings and it just said, I move to terminate my supervised release, that that would be appealable when it was denied? Not if the revocation proceedings are ongoing. And I think that is similar to the circumstances in the unpublished Fourth Circuit cases that we cite, Terry and Mohammed, where there's a revocation proceeding that's ongoing, and then the defendant asks to change aspects of his supervised release. That would end the Fourth Circuit in both cases very quickly says, well, because there's still stuff pending in the court, we do have to wait for the revocation proceedings to resolve. I guess it's, I mean, I know no district court in our district would do this, but if the district court just took forever to do the revocation proceeding, there'd be some way, I don't know, I don't know, something like mandamus or something similar. Right. So there, yes. So mandamus, I think, is kind of the classic remedy when there is unexplained lengthy delay. And that is kind of what could be sought. I think it's notable here, the district court, when it denied at the hearing, when it gave its reasons for why it was denying the motion to dismiss, it was ready to proceed with the revocation proceeding. It was ready to go right then. And it was the parties who asked that the revocation proceeding wait to see what happens in the pending state court cases. Now it's been denied, it's been delayed further at the government's request to see what happens in those revocation proceedings. But on the day of the revocation, it was scheduled for a revocation proceeding. The district court denied the motion to dismiss and the defendant and the government together asked, don't go forward with the revocation proceeding. Let's say we say we don't have jurisdiction and then when the time is right, the question of whether the sentence was allowed to impose prison plus probation plus supervisory release gets before us. And let's say we vacate that sentence. Could the government argue at resentencing that now that we know what his behavior has been since sentencing, that the court should impose a longer, harsher sentence than it did originally? I've not looked at that specifically. I think we could. I mean, I think PEPR stands for the opposite proposition, which is that where you're resentenced after a long delay, the district court can take into account good behavior between the original sentencing and the later sentencing. I think the argument would be the same on the government side, but I think there's also an earlier issue that the government could argue for at resentencing, which is the kind of little two type issues, which is that if the government was not able to get supervision over the defendant through the DC code provisions, then that might well warrant a longer term. You'd also have a problem under North Carolina versus Pierce, a due process problem where if it had been a direct appeal, you can't get a higher sentence on retrial. Well, you could get a higher sentence if you're knocking out what the district court understood to be part of the sentence. I think that's what little two goes through. I do think it's important the hypotheticals I don't think are occurring here because as I understand the defense position, they don't want a resentencing. They don't want this court to vacate under circumstances and send it back for resentencing. In fact, and I suspect that's because the sentence already reflects and the government is not challenging a significant windfall to the defendant, which is that the supervised release term or sorry, the incarceration term here was 16 months of immediate incarceration than 14 months of suspended incarceration. I agree. I think that's what Mr. Farley is proposing. I mean, he's proposing the remedy as you described it, but just because he wants it doesn't mean he'll get it. And then, I mean, I think some of these, you know, little did not end up in a better place when he, after he won his appeal. Right. That's exactly right. And I think that Mr. Farley, I don't want to speak for him, but I, as I read the reply brief, he does not want to go back for resentencing, maybe because of those sorts of concerns. I did have one more thing I wanted to say on the collateral order doctrine that may be helpful, which is that when you're looking at this right to trial, the double jeopardy type claims, Midland Asphalt from Justice Scalia's opinion there recognizes that almost any right could be, with wordplay, reframed as a right to trial. But then he says, what we are looking for is an explicit statutory or constitutional guarantee that trial will not occur. That's what triggers this right to trial under appealability, under the collateral order doctrine. And that does not appear to be satisfied here. He's not arguing there's some freestanding explicit constitutional or statutory right not to have the revocation proceeding go forward. What about the analogy that Mr. Farley made that after conviction, after someone has served their sentence, there are similar concerns to something like double jeopardy. He's making an analogy to that. What would you say to that argument? So, I mean, to be clear, he has not served his written sentence, right? His written sentence is supervised release. So he is instead trying to alter the terms of his written sentence, which none of the cases that he is citing deal with. He was not sentenced to probation, immediate probation. He was sentenced to suspended probation. And so he has not served his supervised release plus his incarceration, which is where the cases that he's citing would come up potentially. Any further questions, Judge Randolph? No. Judge Walker? Okay, thank you. Thank you, Mr. Hansford. Mr. Farley, we'll give you two minutes for rebuttal. Thank you. I'll begin with the government's reliance on Justice Scalia's opinion in Midland Asphalt. Justice Scalia's dissent in cell, the later in time case, points out that what he tried to establish in his opinion in Midland Asphalt is no longer the case. Interlocutory jurisdiction is appropriate not only when there's a specific right that can be pointed to, but when there are analogous things that you can point to. And that is shown in district courts sometimes exercising interlocutory jurisdiction in criminal cases and recognizing that there is some flexibility there. As for Judge Walker's questions about whether or not Mr. Rodas could be sentenced to a more strict sentence, I agree with the conversation that Mr. Rodas is not seeking resentencing. And we argue that that is not a possibility here. But if there is a resentencing involved, Mr. Rodas cannot be sentenced to a greater sentence because he has a legitimate expectation of finality in his sentence. Little, too, relies, I think, entirely on the fact that Mr. Little appealed his sentence under direct appeal to show that he didn't have a legitimate expectation of finality. That is not the posture here. Mr. Rodas has that expectation and his sentence cannot be increased. That's Townsend. That's North Carolina versus Pierce, as Judge Randolph pointed out. I think my last point would be that, as Judge Walker asked, if Mr. Rodas had filed this motion one day before the petition, potentially in a one-line motion like you proposed, there would be no argument that there couldn't be jurisdiction on appeal. And none of the cases pointed out by the government say why. He did make the argument. Mr. Hansford made the argument. Mr. Hansford said that response was that not in the cases where there is ongoing revocation proceedings. So your hypothetical is not that. Yes, I was saying if he'd filed it one day before the petition was filed, then there would be jurisdiction on appeal here. And the unpublished cases in the Fourth Circuit don't explain why probation filing a petition would divest this court of appellate jurisdiction, one of which explicitly points out that the district court hadn't actually ruled on the motions yet. And so appellate jurisdiction was inappropriate. And so those cases should not control here. And you might be right about little not being analogous and the remedy that you would get if you win, either with this panel or if there's no jurisdiction here, a future panel. But sometimes our best guesses are not right. That obviously we don't ask courts to speculate on future things. Thank you very much. Thank you to both counsel.
judges: Rao; Walker; Randolph